UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KAREN BARROW, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-00170-Y-BL |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. §405(g), Plaintiff Karen Barrow (Barrow) seeks judicial review of the Commissioner of Social Security's decision, which denied her application for a period of disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The United States District Judge reassigned the case to this court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this court recommends the decision of the Commissioner be affirmed and this case be dismissed.

### I. Statement of the Case

After a hearing on June 27, 2013, the Administrative Law Judge (ALJ) issued an unfavorable ruling on August 9, 2013, finding that Barrow was not disabled at any relevant time. The ALJ applied the five-step sequential analysis found in 20 C.F.R. § 404.1520(a). First, the ALJ determined that Barrow had not engaged in substantial gainful activity since her alleged onset of disability, January 16, 2012. Next, the ALJ found that Barrow suffered from severe

multiple sclerosis, depression, and migraine headaches. Third, the ALJ determined that Barrow's condition did not meet or equal a listed impairment. Then, the ALJ found that Barrow's residual functional capacity (RFC) allowed her to perform light work activity by no use of ladders, ropes, or scaffolds, occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, crawling, handling/fingering, and an ability to carry out detailed but not complex instructions. Finally, the ALJ determined that Barrow could not perform her past relevant work, but that she could perform other jobs in the national economy like bakery line conveyor worker and fruit distributor.

The Appeals Council denied review on January 28, 2014. The ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review).

## II. Factual Background

Prior to her alleged disability, Barrow worked as a data entry clerk, a customer service representative, and a tech support representative. (Tr. at 21.) Barrow claims that she was fired from her job in January 2012, because she had a relapse of multiple sclerosis and that she has not worked since her termination. (Tr. at 35.) Barrow testified that the majority of her past relevant work had been with technology companies assisting customers with technical support. (Tr. at 36.) However, Barrow reported that she rarely uses computer technology in her daily life since the onset of her alleged disability. (Tr. at 34.)

Dr. Scott Hall first diagnosed Barrow with multiple sclerosis on February 10, 2011. (Tr. at 256.) At the hearing, Barrow testified that each multiple sclerosis relapse caused her to "lose a lot of things" referring to memory loss and normal cognitive functioning. (Tr. at 37.) Barrow

reported that she had suffered from problems with walking and an inability to read after her multiple sclerosis relapses. *Id.* In regard to these relapses, Barrow stated, "Some doesn't always come back and when you have a relapse this is what happens . . . ." *Id.* Barrow continued to seek and receive treatment for multiple sclerosis while pursuing her disability claim.

As a result of her disability claim, Barrow met with Dr. James Manuel, a psychologist and State Agency physician, on March 14, 2012, for a psychological examination. (Tr. at 277.) Dr. Manuel reported that Barrow's chief complaints were multiple sclerosis, memory loss, and lack of concentration. *Id.* Dr. Manuel administered the Mini Mental Status Exam (MMSE) and found that Barrow performed rather well despite her claims of cognitive difficulties. (Tr. at 279.) Specifically, Dr. Manuel noted that Barrow displayed an ability to recall numbers, focus, concentrate, and perform simple mathematical calculations. (Tr. at 280.) Despite these results, Dr. Manuel reported that Barrow endorsed cognitive symptoms related to forgetfulness, comprehension, confusion, everyday functioning, feeling overwhelmed, and burdening others with her duties. *Id.* Dr. Manuel listed several possibilities for the discrepancies between the MMSE results and Barrow's reported symptoms, including lack of sensitivity of the MMSE, exaggeration of symptoms by Barrow, and Barrow's explanation that she has "good days and bad days." *Id.* Ultimately Dr. Manuel diagnosed Barrow with major depressive disorder which seemed to be exacerbated by her multiple sclerosis. (Tr. at 281.) Dr. Manuel reported that Barrow might respond favorably to individual psychotherapy and continued psychotropic intervention. *Id.* Dr. Manuel reported that he believed that Barrow's psychological problems would not interfere with her ability to work, but that her continued physical problems would likely "dampen her mood and may interfere with her performance of job duties and her ability to be present when expected." *Id.*

Barrow saw Dr. Michal Douglas, M.D. on April 11, 2012, in connection with her disability claim. (Tr. at 297.) Dr. Douglas administered an RFC assessment aimed to determine Barrow's physical limitations. *Id.* According to Dr. Douglas, Barrow could lift no more than 20 pounds and frequently lift no more than ten pounds. (Tr. at 298.) Dr. Douglas reported that Barrow could walk or stand for at least two hours and sit for about six hours in an eight hour workday. *Id.* Dr. Douglas noted, "[Stand/Walk] limited to 2 hours due to fatigue and gait with MS." *Id.* Finally, Dr. Douglas reported, "The alleged limitations are supported by evidence in file but [claimant] is in treatment and responding." (Tr. at 304.)

Barrow underwent an intake assessment at Mental Health Mental Retardation (MHMR) of Tarrant County on January 29, 2013. (Tr. at 519.) While at MHMR, Barrow met with Julia Lillie, a licensed clinical social worker. *Id.* Barrow reported mood swings, feelings of isolation, a lack of energy, and decreased concentration. (Tr. at 515.) Lillie noted that Barrow exhibited signs of bipolar disorder (mixed) and, utilizing a Bipolar Algorithm, assessed Barrow a score of 24 (on a scale of 10-70) on the Total Brief Bipolar Disorder Symptom Scale (BDSS). (Tr. at 519.)

Barrow met with Dr. Geetha Reddy, a psychiatrist at MHMR, on June 24, 2013, to undergo another psychological evaluation. (Tr. at 490.) Dr. Reddy diagnosed Barrow with bipolar II disorder. (Tr. at 494.) Dr. Reddy also composed a letter regarding Barrow's condition on that date, which reads:

> Karen Barrow attended her first appointment with MHMRTC medical staff today, June 24th, 2013. During the appointment, I diagnosed her with Bipolar II disorder, Depressive type. I prescribed the following medications to her today: Abilify and Topomax. She is unable to work on a permanent basis due to her mental health symptoms.

(Tr. at 470.)

### III. Standard of Review

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716,

718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. Discussion

Barrow now appeals the Commissioner's determination on the basis that her bipolar disorder and multiple sclerosis result in "periodic flare-ups that interfere with her ability to sustain employment." (Pl. Br. at 9.) Further, Barrow contends that the ALJ did not conduct a proper credibility analysis when assessing her testimony as not entirely credible. *Id.*

### A. The ALJ properly assessed Barrow's ability to sustain employment, not just obtain employment.

RFC is the most an individual can still do despite her impairments. 20 C.F.R. §§ 404.1545, 404.1520; SSR 96-8p, 1996 WL 374184 (July 2, 1996). Ruling 96-8p makes clear that RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities *on a regular and continuing basis*. SSR 96-8p, 1996 WL 374184 (July 2, 1996).

> A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.

*Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) (emphasis in original). Generally, the determination whether a claimant can maintain employment is subsumed in the analysis regarding the claimant's ability to obtain employment. *See Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003); 20 C.F.R. § 404.1545; SSR 96-8p. However, an assessment of sustainability is proper when the claimant's condition "waxes and wanes in its manifestation of disabling symptoms." *Perez*, 415 F.3d at 465 (quoting *Frank* at 619). In any event, a claim of inability to sustain work must be supported by medical evidence and not merely the claimant's personal history. *Singletary* at 822; *see also* 20 C.F.R. §§ 404.1546; 404.1560.

### 1. The ALJ appreciated and addressed the episodic nature of Barrow's conditions.

Barrow asserts both exertional and non-exertional impairments. The medical records reveal that she was diagnosed with relapsing, remitting multiple sclerosis and bipolar disorder. (Tr. at 256, 494.) The ALJ found that Barrow suffered from several severe impairments, including multiple sclerosis, depression, and migraine headaches, which would have more than a slight effect on her ability to work. (Tr. at 14.) Barrow testified at the hearing that her multiple sclerosis relapses negatively affected her concentration, memory, balance, vertigo, motion sickness, and physical functioning. (Tr. at 38.) She revealed that she has multiple sclerosis flare-ups a "couple of times a month" and that the flare-ups could require her to lie in bed for a week. (Tr. at 42.) Barrow testified, "During a relapse I don't do anything. I, I'll end up staring at the ceiling for hours and hours. I don't mean to. It just happens." (Tr. at 44.) Barrow stated that during a relapse she can spend two hours at the grocery store without even knowing why she went to the store. (Tr. at 45.) Barrow began receiving Tysabri injections each month to help with

her multiple sclerosis, but she reported to her doctors that the injections did not fully alleviate her symptoms. (Tr. at 254.) In response to questioning, Barrow informed the ALJ that, at the time of the hearing, she could no longer afford her Tysabri injections to cope with the relapses and that she had not received the injections in about two months. (Tr. at 50.)

The Listings specifically describe multiple sclerosis as an "episodic" condition. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 11.00(D) (2013). Further, regarding multiple sclerosis, the Listings advise that "consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals." *Id.* Barrow testified that her relapses occur a couple of times a month and that they can be debilitating. (Tr. at 42.) In her opinion, the ALJ found the State Agency physician's determinations to be persuasive. (Tr. at 17.) Specifically, the ALJ acknowledges that Dr. Manuel cited "supportive rationale in which . . . the evidence of record establishes the claimant has multiple sclerosis that has caused ongoing issues in her life." (Tr. at 16.) The ALJ noted that Barrow claimed that her symptoms waxed and waned and that Dr. Manuel reported some impairment of memory, attention, and concentration. *Id.* The ALJ summed up Dr. Manuel's psychological examination of Barrow by stating, ". . . the State Agency physicians determin[ed] her depression did not preclude her ability to understand, remember, and carry out detailed, but not complex instructions; make decisions, concentrate and attend for adequately extended periods; interact with others; and to respond to changes appropriately." *Id.*

The ALJ next addressed the physical exam by State Agency physician, Michal Douglas, declaring, "State Agency [physicians] determined the claimant's multiple sclerosis did not preclude performing job duties at the light level of exertion with the limitation of standing/walking limited to two hours due to fatigue and gait secondary to multiple sclerosis." *Id.* Concluding, that the "record establishes she could do light housework and take care of her children; use public transportation; and reported taking walks with her children. Therefore,

although State Agency physicians determined the alleged limitations were supported by evidence in the file, the claimant was in treatment and responding." *Id.*

A specific finding that a claimant can maintain employment is not required unless evidence exists "that a claimant's ability to maintain employment would be compromised despite [her] ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC . . . ." *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). In this case, the ALJ opined, "No treating physician has documented a medically determinable impairment that would prevent the claimant from engaging in substantial gainful work activity." (Tr. at 21.) Accordingly, the ALJ found, after considering all the evidence, that the documented symptoms did not rise to "the level of severity to wholly compromise the claimant's ability to initiate and *sustain* activities and function independently and effectively on a *sustained* basis." *Id.* (emphasis added). Contrary to Barrow's claim, the record clearly evidences the ALJ's appreciation for the episodic nature of Barrow's claim as well as the ALJ's opinion that Barrow could function effectively on a sustained basis. As required, the Court defers to the ALJ's opinion since substantial evidence exists on which the ALJ could have based her opinion that Barrow was not disabled.

**B. The ALJ properly assessed Barrow's credibility.**

Next, Barrow contends that the ALJ conducted a faulty credibility analysis in failing to supply the requisite details when determining that Barrow's subjective complaints were "credible only to the extent that they are supported by the evidence of record . . . ." (Pl. Br. at 16.) When a claimant alleges symptoms such as pain or fatigue, the ALJ must conduct an objective/subjective, two-step analysis to evaluate the symptoms. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008); SSR 96-7p, 1996 SSR LEXIS 4. During the first, objective step,

9

the ALJ must determine whether there is an underlying, medically-determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Salgado* at 458. When an impairment described in step one is established, then the ALJ proceeds through the second, subjective step to assess "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.* at 459. As part of the second step, the ALJ must make a finding regarding the credibility of the claimant's testimony regarding their symptoms. *Id.*

The Fifth Circuit explicitly rejected the requirement that an "ALJ . . . articulate specifically [all] the evidence that supported [her] decision and discuss [all] the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Rather, the ALJ is simply bound to generally state her reasons for rejecting a claimant's complaints. *Id.* at 164. Both SSR 96-7p and 20 C.F.R § 416.929(c)(3) set out a seven-factor analysis for an ALJ to apply in order to assess the credibility of a claimant's subjective allegations of pain or fatigue. These factors include:

> (1) your daily activities; (2) the location, duration, frequency, and intensity of your pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). Although the ALJ must articulate the basis for her credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were

considered." *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Finally, "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (per curiam). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

### 1. The ALJ conducted the proper objective/subjective analysis of Barrow's credibility.

For the objective part of the two-step analysis, the ALJ determined that Barrow did indeed have severe, medically-determinable impairments, including multiple sclerosis, depression, and migraine headaches. (Tr. at 14.) As stated, the ALJ must then make, for the subjective part of the analysis, a determination as to the extent and credibility of the claimant's symptoms. In Barrow's case, the ALJ was aware of the required analysis and documented the two-step requirement in her opinion. (Tr. at 20.)

The ALJ's opinion contains evidence that she thoroughly addressed the seven factors enumerated in SSR 96-7p, although not specifically in list format. The ALJ considered Barrow's daily activities **(1)** and found, through Dr. Douglas' report, that Barrow was able to do light housework, care for her children, use public transportation, and take walks with her children. (Tr. at 16.) Next, the ALJ assessed the location, duration, frequency, and intensity of Barrow's symptoms **(2)** by examining and listing, in detail, Barrow's testimony regarding her symptoms, Dr. Manuel's medical observations, Dr. Douglas' medical observations, Dr. Reddy's medical observations, Mr. Tommy Barrow's third-party report, Dr. Valery Lipenko's medical

observations, records from Tarrant County MHMR, and records from North Hills Family Medicine. (Tr. at 15-19.) The ALJ also evaluated any precipitating and aggravating factors **(3)** related to Barrow's impairments; specifically noting that Barrow suffers from multiple sclerosis flare-ups, an inability to tolerate motion, and vertigo. (Tr. at 15.) The ALJ, taking notice of the type, dosage, effectiveness, and side effects of any medication Barrow had taken to alleviate her pain or other symptoms **(4)**, made numerous references throughout her opinion to the medications that Barrow had taken and the efficacy and side effects of those medications. (Tr. at 16-19.) The ALJ appeared cognizant of treatment, other than medication, that was recommended for relief of Barrow's pain or other symptoms **(5)**, including physical therapy suggested by Dr. Lipenko. (Tr. at 18.) Also, the ALJ noted that Barrow informed Dr. Lipenko of her desire to utilize other measures to relieve her pain or other symptoms **(6)** by attempting gait and balance stability exercises at home. *Id.* Finally, the ALJ clearly expressed knowledge of other factors concerning Barrow's functional limitations and restrictions due to pain or other symptoms **(7)**. This is evident in the ALJ's RFC assessment and findings. (Tr. at 20.)

The Court finds that the ALJ conducted a proper credibility analysis by weighing both the objective and subjective evidence in Barrow's case. As such, the Court finds no error by the ALJ in determining that Barrow's complaints were "credible only to the extent that they are supported by the evidence of record . . . ." (Tr. at 21.)

### V. Conclusion

For the foregoing reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this _8th_ day of June, 2015.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**